THE PENNSYLVANIA COMPANY

*v.*

DANIEL J. McCAFFREY.

*Opinion filed April 21, 1898—Rehearing denied June 10, 1898.*

1. CARRIERS—*relation of carrier and passenger does not end with the arrival of train at destination.* The relation of carrier and passenger does not cease with the arrival of the train at the passenger's destination, but the carrier is still bound to furnish him an opportunity to safely alight.

2. SAME—*carrier must use highest degree of care in providing safe passage from train.* A carrier must use the highest degree of care which is reasonably practicable, to provide its passengers with a safe passage from the train.

3. SAME—*passenger may assume that carrier will not expose him to undue danger in alighting.* On leaving a train a passenger may assume that the carrier will not expose him to any danger which could be avoided by the exercise of due care, and that the carrier has done its duty in providing him a safe place to alight.

4. SAME—*alighting from train on side opposite from depot is not negligence per se.* Alighting from a train on the side opposite from the depot, according to custom, is not negligence *per se*, as a matter of law, where the carrier provides no means of preventing passengers from so alighting and takes no steps to warn them against it.

5. SAME—*question of negligence is for the jury.* Where a passenger, on alighting from a train on the side opposite the depot, without objection from the carrier, is struck by another of the carrier's trains running on a parallel track, it is for the jury to say whether, under all the circumstances, the passenger was guilty of contributory negligence or whether the carrier was negligent in not providing a safe place to alight.

6. EVIDENCE—*plaintiff may show custom in alighting from train elsewhere than at depot.* Evidence tending to show a custom or habit in boarding or alighting from trains elsewhere than at the depot, with the knowledge or consent of the carrier, is admissible in an action by a passenger for injuries received while so alighting.

7. SAME—*police record of accidents not admissible.* An entry in an accident record book kept by the police at a station near the place of injury is not admissible in an action for damages for such injury, where the entry is not made at the time of the accident, by witnesses thereof, but from reports of police made from hearsay.

8. INSTRUCTIONS—*it is not error to refuse instructions stating what facts show negligence.* Instructions undertaking to tell the jury what

specified facts show negligence are properly refused, as it is not the province of the court to instruct the jury that certain facts constitute negligence.

9. SAME—*party cannot complain of error in his own favor.* One can not complain of error in an instruction which is in his own favor.

PHILLIPS, J., dissenting.

*Pennsylvania Co.* v. *McCaffrey,* 68 Ill. App. 635, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

This is an action on the case, brought by the appellee against the appellant company to recover damages for injuries received by him on December 11, 1894. The appellant company had a double-track line of railroad, running north and south along what is known as Stewart avenue in Chicago, and across Archer avenue and Twenty-second street in that city. On December 11, 1894, appellee was a passenger on one of appellant's in-bound passenger trains, going north from Roby on its east main track. The station of the appellant is a small building near Archer avenue on the east side of the tracks. The next street north of Archer avenue is Twenty-second street. On the day in question, the passenger train, on which appellee was a passenger, consisted of ten or eleven cars. Appellee was in the third car from the front. When the train stopped, the forward end of the third car stood about in the middle of Twenty-second street, and a portion of the rear cars stood south of said station across Archer avenue. There was a track, belonging to the appellant, west of the east track, on which the train was. Upon the arrival of the train, appellee went forward to the front platform of the third car, in which he was riding, and alighted from the car on the west side thereof. His intention was to proceed westerly on Twenty-second street to his home. There was a space of about seven

feet between the east track, on which was the train from which he alighted, and the west track. As he left the car and stepped upon the west track, an engine thereon bound south struck him, and threw him in such a way that his left foot was crushed and mangled by the engine wheels, so that amputation of the same became necessary; and his right leg was also seriously injured.

Upon the trial of the case below, the jury returned a verdict in favor of appellee. Motion for new trial was overruled, and judgment rendered upon the verdict. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

GEORGE WILLARD, for appellant.

DUNCAN & GILBERT, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The first error assigned is, that the trial court refused to give the first instruction asked by the appellant. That instruction was as follows: "The court instructs the jury, that, the pleadings and all the evidence considered, your verdict should be for the defendant." The contention of the appellant is, that it had provided a station and depot grounds on the east side of the east track, on which the passenger train stopped, that it was the duty of the appellee, when he alighted from the train, to alight upon the east side thereof where there was no track; and that, by alighting upon the west side where there was a track, he was guilty of what amounts in law to negligence *per se*, and on this account is not entitled to recover.

The declaration consists of three counts, and three additional counts filed by leave of court. These counts alleged, in substance, that it was the duty of the company so to manage its railroad and passenger stations

and grounds, that passengers could alight from their trains and depart therefrom in safety; and that the company did not regard its duty in this respect, but permitted a locomotive engine to be run upon a track, forming a part of its line of railroad, parallel with the track upon which the passenger train was, and while the latter train was discharging its passengers. The evidence of the plaintiff below and of many other witnesses tended to show, that, for many years, it had been the custom or habit of passengers upon the incoming trains of appellant to alight from the cars at Twenty-second street on the west side thereof. It was also shown that, upon the arrival of trains, including the train in question, the company never gave passengers any notice not to alight on the west side of the train upon Twenty-second street, which is a public thoroughfare in the city of Chicago, nor warned them in any way, by the erection of barriers on the west sides of the platforms of the cars, or by stationing an officer to notify them not to alight on the west side, that there was any danger in doing so. There was also introduced in evidence a rule of the appellant company, made and published for the guidance of its servants, which rule is as follows: "A train approaching a station, where a passenger train is receiving or discharging passengers, must be stopped before reaching the passenger train." In the present case, the evidence tends to show that the passenger train in question had stopped, so that the third car thereof was standing across Twenty-second street; and that the train which injured appellee, approaching from the north on the west track, did not stop before reaching the passenger train on the east track. Under the circumstances thus detailed, it cannot be said that the act of the appellee in alighting on the west side of the train was, in itself, as matter of law, an act of negligence. It was for the jury to determine from all the facts and circumstances, whether or not the appellee was exercising ordinary care, and

whether or not the appellant was guilty of negligence in suffering a train to be moving upon its west track at the time stated.

When appellee alighted, the relation between himself and appellant was that of passenger and carrier. This relation between a passenger and a railroad company does not cease upon the arrival of a train at the place of the passenger's destination, but the company is still bound to furnish him an opportunity to safely alight from the train. It is its duty, not only to exercise a high degree of care while the passenger is upon the train, but also to use the highest degree of care and skill, reasonably practicable, in providing the passenger a safe passage from the train. (*Denver, etc. Railroad Co.* v. *Hodgson*, 18 Col. 117; *Chicago and Eastern Illinois Railroad Co.* v. *Chancellor*, 60 Ill. App. 525). Bishop in his work on Noncontract Law (sec. 1086) says: "The tracks around the platforms, and places for entering and leaving the cars, * * * should be made safe and kept so." In *McDonald* v. *I. C. R. R. Co.* 88 Iowa, 345, in discussing the question as to the right of a passenger to alight from the rear platform of a car instead of the front platform thereof, it was said, that it was a general custom for passengers to leave the cars from both platforms; and that, because of this custom, passengers had the right to presume, until in some way the contrary appeared, that either platform of a car was accessible for egress, and that, if the right was to be restricted in particular cases, it was the duty of the persons in charge of the train to use precautions against such egress, as by locking the door, or placing a person there to give directions.

In *Baltimore and Ohio Railroad Co.* v. *Kane*, 69 Md. 11, it was held that, where safe and convenient means of going on and off the cars have been provided by the company, it is the duty of the passenger to make use of such means, but it was at the same time held, that this was true only when the railroad recognized the means so provided, as

the only place where passengers would be received and discharged, and had so ordered. In that case it was said: "Wherever a railroad company is in the habit of receiving passengers, whether at the station or some point outside, passengers have a right to assume that such parts of the premises are in safe condition for such purpose. * * * If the company intended to prohibit passengers from alighting elsewhere than at the platform in front of the station, notice to that effect should have been given." In *McKimble* v. *B. & M. R. R. Co.* 139 Mass. 542, the Supreme Court of Massachusetts used the following language: "If a passenger, he would continue to be such while rightfully leaving the train and station. * * * The defendant (railroad company) had made provision only upon one side of the track for passengers to leave the cars, and it was dangerous to leave upon the other side. It was a question for the jury, whether it was negligent in the defendant not to have provided some means to prevent passengers from leaving on the wrong side, or to notify them not to do so." In the same case, which came up a second time and is reported in 141 Mass. 463, it was contended, that the plaintiff's intestate forfeited his rights as a passenger by leaving the train upon the side, upon which no provision had been made for passengers to alight; and that, even if there was any inducement or invitation by the company to leave the train, it was merely an invitation or inducement to do so upon the other side thereof. In reference to this contention the court there say: "If the train had reached a point where the passenger might lawfully leave it, as it was clearly dangerous to do so on one side, and no means were provided to prevent passengers from leaving on the wrong side, and no direction was given them not to do so, it was a question for the jury whether reasonable care for the safety of the passengers had been used by the railroad." In that case, the court furthermore said: "He would still be a passenger within the meaning of that word in the

statute, if, by reason of defendant's neglect of precautions which it should have taken, the plaintiff's intestate left the cars on the wrong side and thereby lost his life."

In *Kentucky and Indiana Bridge Co.* v. *McKinney*, 9 Ind. App. 213, it was held that it was a question for the jury to determine, taking into consideration all the facts and circumstances in connection with the alighting of the passenger, whether such passenger was guilty of contributory negligence in stepping off the train at the time of his injury, and it was there said: "If there had been a closed gate or bar in position to check or prevent him from stepping off the cars from that side, a different question would be presented." (See, also, *Hulbert* v. *New York Central Railroad Co.* 40 N. Y. 145). The authorities seem to hold, that it is competent for the passenger to show a habit or practice as to the mode of alighting from trains, under such circumstances as have been here detailed. Evidence tending to show a habit of boarding or alighting from trains elsewhere than at the depot, with the knowledge and consent of the railroad company, is admissible. (*Baltimore and Ohio Railroad Co.* v. *Kane, supra; Keating* v. *New York Central and Hudson River Railroad Co.* 49 N. Y. 673; *McGee* v. *Missouri Pacific Railroad Co.* 92 Mo. 208; *Nicholson* v. *Railroad Co.* 3 H. & C. 534; 34 L. J. Ex. 84).

In view of the circumstances thus presented, we think the court committed no error in refusing the instruction above quoted, and leaving it to the jury to determine the question, whether the plaintiff exercised ordinary care, and whether the defendant was guilty of such negligence as produced the injury.

It is further assigned as error, that the court refused to give instructions numbered three, four, five, six and seven asked by defendant below. We do not think, that there was any error in refusing these instructions. There is a general defect in all of them, in that they undertake to tell the jury that certain specified facts constitute negligence. It is for the jury to determine whether the

defendant has been guilty of negligence under all the evidence in the case. It is not the province of the court to tell the jury, that certain facts constitute negligence. (*Pennsylvania Co.* v. *Frana*, 112 Ill. 398; *New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal*, 160 id. 40; *Wald* v. *Pittsburg, Cincinnati, Chicago and St. Louis Railroad Co.* 162 id. 545). Some of these instructions assume, that it was the duty of the appellee, when alighting from the train, to look out for engines or cars that might be approaching upon the west track of the company. In this respect the instructions were clearly erroneous. In *Pennsylvania Co.* v. *Frana, supra*, it was held, that the court properly refused an instruction, which told the jury that, if they believed from the evidence that the plaintiff could have discovered the approach of the train, and could have avoided the injury by looking and listening for its approach, he could not recover; and that such instruction virtually took the question of fact as to plaintiff's care or negligence from the jury. Much less can it be said, that the failure to look should defeat a recovery under such a state of facts as is here presented. In such a case as this, the rule is, that a passenger is justified in assuming, that the company has, in the exercise of due care, so regulated its trains, that the road will be free from interruptions or obstructions, when passenger trains stop at the depot to receive and deliver passengers. In leaving the train the passenger has a right to assume, that the company will not expose him to any danger, which by the exercise of due care can be avoided; and that the company has done its duty in the matter of providing him safe landing. Hence, the general rule, which has been applied by some courts, in ordinary cases of parties crossing railroad tracks, that they should stop, look and listen before making the venture, would not apply in a case like the present. (*P. W. & B. Ry. Co.* v. *Anderson*, 72 Md. 519; *Beirbridge* v. *K. C. Ry. Co.* 36 Mo. App. 669; *St. L. &*

*S. W. Ry. Co.* v. *Johnson*, 59 Ark. 122; *Franklin* v. *S. C. M. R. Co.* 85 Cal. 63).

Moreover, these instructions assume, that a place had been designated as a place for alighting from the cars. The existence and use of the station at the corner of Archer and Stewart avenues, as one place of alighting, was all the proof there was upon the subject. The instructions asked the court to say, as matter of law, that this station was the only place, where a passenger could justifiably attempt to alight from the cars. They wholly ignore the evidence, tending to show the practice, which prevailed, of permitting passengers to alight from the cars at Twenty-second street on the west side of the east track. (*Baltimore and Ohio Railroad Co.* v. *Kane, supra*).

It is contended by appellant that, when the accident occurred, the train from which appellee alighted was in motion. It would seem, that the question, whether the train was in motion or not, would be immaterial in this case, as the injury is not claimed to have arisen by reason of an attempt of appellee to alight from a car in motion. But, however this may be, the jury were requested to answer the following question: "When the plaintiff stepped or jumped off defendant's train, was it in motion?" The answer of the jury to this question was: "It was not in motion." The jury thus found, as matter of fact, that the train was not in motion.

In the present case, the court gave for the appellant company an instruction, which told the jury that, if they believed from the evidence, that the passenger train was in motion at the time appellee stepped off said train, then he was guilty of negligence. Whether this instruction was erroneous or not, it stated the law favorably for the appellant and therefore it cannot complain.

It is also assigned as error by the appellant, that the court refused to admit certain evidence offered by the appellant. The appellant offered to introduce in evidence

an entry upon a book, kept by the police at the Twenty-second street police station, in which it was customary to make a record of accidents that were reported at that office. It was not error to refuse to receive in evidence this entry from the police record. The entry was made in the book from reports made to the desk sergeant in charge at the police station by policemen who had not witnessed the accident, but merely reported what they had heard others say. Such evidence was incompetent, as being mere hearsay. The entry was not a part of the *res gestœ*, because it was made some time after the accident occurred, and the reports of the accident were made some time after it occurred. That which occurs before, or after the act is done, is not a part of the *res gestœ*, although the interval of separation is very brief. The declaration of a person, injured by a railway train, as to the cause of the injury, made after the declarant was removed from the place of injury, is not admissible as a part of the *res gestœ;* it is a statement as to a past occurrence and mere hearsay. (*Montag* v. *People*, 141 Ill. 75; *Chicago West Division Railway Co.* v. *Becker*, 128 id. 545). Some other objections are made to the rulings of the trial court in sustaining objections, made to questions asked of some of the witnesses by appellant's counsel on the trial below. After a careful examination of these objections and of the arguments of counsel in relation thereto, we are satisfied that no material error was committed in this regard by the trial court.

Accordingly the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Phillips, dissenting.